*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* I. W. LILLEY, Minor.

UNPUBLISHED
July 18, 2024

No. 369499
Clare Circuit Court
Family Division
LC No. 23-000004-NA

Before: LETICA, P.J., and BOONSTRA and MARIANI, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to her minor child, IL, under MCL 712A.19b(3)(c)(*i*), (g),and (j).[1] We affirm.

## I. FACTUAL BACKGROUND

In January 2023, petitioner, the Department of Health and Human Services (DHHS) petitioned the trial court for the removal of IL, who was then approximately 14 months old, from respondents' care. The petition alleged that physicians at the Center for Child Protection at the Helen DeVos Children's Hospital had examined IL after he sustained a spiral fracture on his left leg and bruising on his ear that was consistent with abuse. Respondents provided no credible explanation for IL's injuries, and the Center for Child Protection made a medical finding of pediatric physical abuse. Petitioner also alleged that a Children's Protective Services (CPS) investigator heard respondents yelling at IL and hitting IL before noticing red marks on IL's back. Further, petitioner alleged that Texas CPS had previously removed respondent-father's daughter from his care after finding that he had perpetrated physical abuse against the four-month-old child and fractured her arm. The trial court issued an ex parte order to remove IL from respondents' home and placed him in a nonrelative foster home. The petition was later authorized, and respondents were granted parenting time at DHHS's discretion.

---

[1] IL's father was also a respondent in the proceedings below, and his parental rights were also terminated by the trial court, but he is not a party to this appeal.

The trial court conducted an adjudication trial for respondent-mother in March 2023 and for respondent-father in April 2023, and respondents admitted to DHHS's allegations regarding IL's injuries and pediatric physical abuse diagnosis. The trial court exercised its jurisdiction over IL and ordered respondents to participate in and benefit from mental-health services, Infant Mental Health services, parenting education classes, and any services recommended in "Baby Court"[2] proceedings. While respondent-mother fully participated in the ordered services and parenting time, she demonstrated only minimal benefit from them. Respondent-mother frequently struggled during supervised parenting time with IL, specifically with understanding IL's nonverbal communication or cues, identifying when a situation was unsafe for IL, and applying appropriate parenting skills. Respondents also argued in IL's presence during parenting time and often did not follow recommendations from their visitation supervisor.

In October 2023, DHHS petitioned the trial court to terminate respondents' rights to IL under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). At the termination hearing, respondents' caseworkers, visitation supervisor, and Infant Mental Health specialist testified about respondent-mother's lack of progress for a majority of the proceedings. The service providers testified that the barriers to reunification that existed at IL's removal still existed at the time of the hearing, and that respondent-mother had not demonstrated the ability to safely parent IL without supervision. The trial court found that petitioner had established by clear and convincing evidence that termination of respondent-mother's parental rights was appropriate under MCL 712A.19b(3)(c)(*i*), (g), and (j), and that termination of respondent-mother's parental rights was in IL's best interests. The trial court entered an order terminating respondent-mother's parental rights as described. This appeal followed.

## II. STANDARD OF REVIEW

We review for clear error a trial court's finding that a statutory ground for termination of parental rights has been proven by clear and convincing evidence. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A finding is clearly erroneous if "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. at 41 (quotation marks and citation omitted). This Court gives deference to "the special ability of the trial court to judge the credibility of witnesses." *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016) (quotation marks and citation omitted).

## III. STATUTORY GROUNDS FOR TERMINATION

Respondent-mother argues that she was not given sufficient opportunity to correct her deficiencies and behavior, suggesting that the trial court therefore clearly erred by finding that a

---

[2] "Baby Court" is "a specialized problem-solving court that supports infants and toddlers, prenatal to age three, who have experienced maltreatment and are in the child welfare system." See <https://michiganecc.org/about/> (accessed July 1, 2024).

statutory ground for terminating her parental rights was proven by clear and convincing evidence. We disagree.[3]

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted). A court may terminate parental rights under MCL 712A.19b(3)(c)(*i*) if it finds clear and convincing evidence of the following:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Termination under subdivision (c)(*i*) is appropriate when "the totality of the evidence" supports a finding that the parent "had not accomplished any meaningful change in the conditions" that led to the court taking jurisdiction over the minor child. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). A respondent's "mere participation" in court-ordered services or a case service plan "is not the same as overcoming the barriers in place." *In re Sanborn*, 337 Mich App 252, 274; 976 NW2d 44 (2021). In this case, the record supports the trial court's findings that the 182-day requirement of MCL 712A.19b(3)(c) was satisfied, the conditions that led to adjudication continued to exist, and there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering IL's age.

The conditions that led to adjudication were the physical abuse of IL, the lack of insight regarding IL's needs, the inability to understand IL's cues, and the inability to communicate effectively with IL. Between April 11, 2023 and December 21, 2023, DHHS offered respondent-mother numerous services to help her reunite with IL, and Baby Court provided respondents with additional intensive services aimed at reunification. While respondent-mother participated in these services, she failed to demonstrate any benefit from them so as to rectify the conditions that led to adjudication. See *Sanborn*, 337 Mich App at 274. Respondents' caseworkers and service providers frequently had to intervene during respondent-mother's parenting time to ensure that IL

---

[3] We note that respondent-mother has failed to specifically address or raise any arguments concerning the trial court's specific findings regarding statutory grounds for termination; rather, she argues generally that she had a close bond with IL and could have rectified the deficiencies in her parenting with additional time. Respondent-mother does not provide any substantive argument or citation to legal authority to support these general arguments. This Court could therefore consider respondent-mother's apparent statutory-grounds or best-interests argument on appeal to be abandoned. See *Riemer v Johnson*, 311 Mich App 632, 653; 876 NW2d 279 (2015); *In re JS & SM*, 231 Mich App 92, 98; 585 NW2d 326 (1998), overruled in part on other grounds by *In re Trejo Minors*, 462 Mich 341, 353 n 10; 612 NW2d 407 (2000). Nonetheless, in the interest of providing stability and finality for IL, we will address respondent-mother's concerns on the merits.

was safe. Despite regular reminders from service providers, respondent-mother was often unable to understand what IL needed and wanted, or recognize when a situation was unsafe for IL. Respondent-mother also repeatedly ignored or dismissed service providers' redirection on how to meet IL's needs or appropriately act around him.

The caseworkers and service providers testified that respondent-mother had not demonstrated the ability to safely care for IL by the time of the termination hearing. In fact, DHHS's concerns about respondents' parenting ability had increased shortly before the termination hearing because of respondent-father's aggressive behavior toward IL and respondent-mother and because of respondent-mother's inability to consider IL's development level; for example, respondent-mother regularly served IL food that was too large for him to safely eat, despite numerous attempts to educate her regarding appropriate feeding. Respondent-mother frequently was unable to identify when a situation was unsafe for IL, or to understand IL's attempts to communicate his needs. As a result, DHHS had not allowed respondent-mother to have unsupervised parenting time with IL since IL's removal. Additionally, respondent-mother's psychological evaluation indicated that she was prone to engaging in high-risk relationships and could not provide safety for IL while he was in the care of respondent-father, who the psychologist had determined could not function as a safe parent. Further, even after months of intensive services, respondent-mother's Infant Mental Health specialist could not determine whether additional time would improve respondent-mother's parenting skills. Accordingly, the trial court did not clearly err by concluding that there was no reasonable likelihood that respondent-mother would rectify the conditions that led to adjudication within a reasonable time. See MCL 712A.19b(3)(c)(*i*). Because only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, we need not address the trial court's findings with respect to MCL 712A.19b(3)(g) and (j). See *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

## IV. BEST-INTEREST DETERMINATION

Respondent-mother also argues that the trial court disregarded the fact that she was closely bonded with IL. To the extent that this is an argument that the trial court clearly erred by finding that termination of her parental rights was in IL's best interests, we disagree.

"If the court determines that one or more statutory grounds for termination exist and that termination is in the child's best interests, the court must enter an order terminating the respondent's parental rights and order that additional efforts for reunification not be made." *In re Ferranti*, 504 Mich 1, 16; 934 NW2d 610 (2019), citing MCL 712A.19b(5). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). In its determination, the trial court may consider factors such as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case-service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714.

Respondent-mother argues that she had a very strong bond with IL throughout the proceedings, making termination inappropriate. While the record indeed reflects that respondent-mother was bonded with IL, the record also reflects that respondent-mother was unable to safely care for IL without supervision during parenting time. Respondent-mother frequently required intervention by service providers to keep IL safe during visitation. Respondent-mother often ignored redirection on how to properly care for IL or understand what he was communicating, and respondents would continue to ignore IL's cues after redirection. Respondents also frequently argued in IL's presence during parenting time, and IL would remove himself from their presence or seek comfort from the visitation supervisor.

The bond between respondent-mother and IL was only one factor considered by the trial court. See *Olive/Metts*, 297 Mich App at 41. The trial court considered respondent-mother's failure to benefit from the services provided by DHHS and the Baby Court, and the evidence that respondent-mother still could not safely care for IL. The court considered the fact that respondents could not parent together or provide safe environment. The court also considered IL's young age and his need for permanency and stability, as well as the fact that IL had thrived in his foster placement, was bonded with his foster family, and IL's foster family had expressed a willingness and ability to adopt IL and provide IL with the stability and safe environment he needed. The record supports the trial court's findings, and we conclude accordingly that the trial court did not clearly err by finding that termination of respondent-mother's parental rights to IL was in IL's best interests. *Ferranti*, 504 Mich at 16.

Affirmed.

/s/ Anica Letica
/s/ Mark T. Boonstra
/s/ Philip P. Mariani

-5-